STATE of Wisconsin, Plaintiff-Respondent,

v.

Samantha HEFT, Defendant-Appellant.†

Court of Appeals

*No. 92–2938–CR. Submitted on briefs June 18, 1993.—Decided August 18, 1993.*

(Also reported in — N.W.2d —.)

†Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martin I. Hanson* of *Hanson, Gasiorkiewicz & Weber, S.C.* of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *Marguerite M. Moeller*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J.   Samantha Heft appeals from an order denying her motion for postconviction relief under sec. 974.02, Stats. Her motion requested an order setting aside a judgment of conviction for homicide by intoxicated use of a vehicle in violation of sec. 940.09(1), Stats., and a new trial on the matter. On appeal, Heft argues that her motion should have been granted because her fourteenth amendment rights to due process and equal protection were denied by the application of sec. 905.13, Stats., which prohibits comment upon or inference from a claim of privilege in criminal but not civil proceedings. We hold that Heft was not deprived of a fair opportunity to present a defense because she was able to present considerable evidence in support of her intervening cause theory. In addition, sec. 905.13 does not violate the equal protection clause of the fourteenth amendment because the legislature had a reasonable basis for distinguishing between criminal and civil actions regarding comment upon or inference from a claim of privilege. Accordingly, we affirm.

Heft has not provided this court with a complete record. Consequently, we will, when necessary, assume that "every fact essential to sustain the trial court's decision is supported by the record." *Suburban State*

*Bank v. Squires,* 145 Wis. 2d 445, 451, 427 N.W.2d 393, 395 (Ct. App. 1988).

Heft was charged with homicide by intoxicated use of a vehicle in violation of sec. 940.09(1), Stats., and was tried and convicted by a jury. Heft did not contest the elements of the crime, but rather sought to prove the affirmative defense contained in sec. 940.09(2) that the death would have occurred even if she had been exercising due care and had not been under the influence of an intoxicant or did not have a blood alcohol concentration in excess of 0.1%. It was Heft's theory that the accident and death of her passenger, Todd Johnson, was caused by her car being rear-ended by Daniel Cisler and propelled off the roadway where it subsequently rolled over.

Cisler was called as a witness outside of the presence of the jury and he invoked the fifth amendment's protection from self-incrimination. Heft requested that the court require Cisler to invoke his fifth amendment privilege in the presence of the jury and that the court instruct the jury that it could draw an inference from Cisler's invocation. The trial court, in compliance with sec. 905.13, Stats., denied Heft's requests. Section 905.13 reads as follows:

> **905.13. Comment upon or inference from claim of privilege; instruction. (1)** COMMENT OR INFERENCE NOT PERMITTED. The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.
>
> **(2)** CLAIMING PRIVILEGE WITHOUT KNOWLEDGE OF JURY. In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate

the making of claims of privilege without the knowledge of the jury.

(3) JURY INSTRUCTION. Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom.

(4) APPLICATION; SELF-INCRIMINATION. Subsections (1) to (3) do not apply in a civil case with respect to the privilege against self-incrimination.

Despite the trial court's denials, Heft was able to offer significant evidence in support of her intervening cause defense. Heft presented testimony by two accident reconstruction experts to support her claim that the accident which killed her passenger occurred when a vehicle driven by Cisler hit the car she was driving. The trial court permitted Heft to introduce out-of-court statements made by Cisler to law enforcement officers and to a civilian in which Cisler gave conflicting accounts of the accident. The court ruled that these statements were not hearsay because they were introduced not for the truth of the matter asserted, but to show Cisler's guilty state of mind. The defense also presented photographs of the Cisler vehicle. The jury subsequently found Heft guilty. The court denied her motion for postconviction relief and Heft appeals.

Heft contends that she was denied her constitutional right to due process when the trial court refused her requests that Cisler invoke the fifth amendment in the presence of the jury and that the jury be instructed that it could draw an inference from Cisler's invocation. Whether Heft was deprived of a constitutional right presents an issue of constitutional fact which is subject to independent appellate review. *State v.*

*Chambers,* 173 Wis. 2d 237, 251, 496 N.W.2d 191, 196 (Ct. App. 1992).

As an initial observation, we question whether the invocation of the fifth amendment privilege or a jury instruction on drawing an inference from such invocation is evidence which affects Heft's opportunity to present a complete defense. Evidence is defined as the sworn testimony of witnesses, exhibits received by the trial court and any facts agreed or stipulated to by the parties or which the court has directed the jury to find. Wisconsin J I—Criminal 103. The United States Supreme court has stated that "while the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness . . . declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production." *United States v. Rylander,* 460 U.S. 752, 758 (1983). We therefore question whether there is a constitutional right to have a witness invoke the fifth amendment in front of the jury or to have the jury instructed that it may draw an inference therefrom. However, it is not necessary for us to definitively decide this issue because we hold that Heft's due process and equal protection rights were not violated.

Under the due process clause of the fourteenth amendment, criminal defendants must be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta,* 467 U.S. 479, 485 (1984). *See also State v. Hahn*, 132 Wis. 2d 351, 355, 392 N.W.2d 464, 465–66 (Ct. App. 1986).

> The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses

and to call witnesses in one's own behalf have long been recognized as essential to due process.

> . . . .

> [However,] the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. But its denial or significant diminution calls into question the ultimate "integrity of the fact-finding process" and requires that the competing interest be closely examined.

*Chambers v. Mississippi*, 410 U.S. 284, 294, 295 (1973) (quoting *Berger v. California*, 393 U.S. 314, 315 (1969)) (citation omitted).

Addressing the merits of the due process issue, Heft argues that the failure of the jurors to hear Cisler invoke the fifth amendment and to be instructed that the jurors are allowed to draw a negative inference from the invocation denied her a meaningful opportunity to present a complete defense. Two cases support our conclusion that Heft was not denied this opportunity.

In *Chambers v. Mississippi*, the trial court prevented Chambers from adversely examining a witness based upon Mississippi's voucher rule that states that a party may not impeach his own witness. *Id.* at 291, 294–95. In addition, the trial court held that the hearsay rule prevented Chambers from introducing out-of-court statements the witness had made to the effect that he, not Chambers, was the actual perpetrator. *Id.* at 292–93. The United States Supreme Court held "that the exclusion of this critical evidence [the out-of-court statements], coupled with the state's refusal to permit [the defendant] to cross-examine [the witness],

denied him a trial in accord with traditional and fundamental standards of due process." *Id.* at 302.

In the case at bar, Heft was prevented from cross-examining Cisler. In contrast with *Chambers,* however, Heft was allowed to introduce out-of-court statements made by Cisler. Law enforcement officers and a civilian testified regarding statements Cisler made to them. The introduction of Cisler's contradictory statements likely was more effective in establishing his guilty state of mind than would be Cisler's invocation of the fifth amendment in the presence of the jury and a jury instruction that an inference could be drawn from Cisler's invocation. The exclusion of Cisler's invocation did not cause a significant diminution in Heft's efforts to develop her defense. *Cf. id.* at 296–97. Consequently, Heft was not denied a trial in accord with traditional and fundamental standards of due process.

In *State v. Whittemore,* 166 Wis. 2d 127, 479 N.W.2d 566 (Ct. App. 1991), this court was presented with a similar issue. In *Whittemore,* the victim, who was hospitalized and unable to speak, was shown a picture of a suspect who was not the defendant. *Id.* at 135–36, 479 N.W.2d at 570–71. The trial court excluded this evidence because the response of the victim, who had since died, was ambiguous. *Id.* at 136–37, 479 N.W.2d at 571. We affirmed, holding that the defendant's due process rights were not violated. *Id.* at 138, 479 N.W.2d at 571. In support of our decision, we pointed out that the defendant's "mistaken identity defense did not rest solely with the incident in [the victim's] hospital room. At trial, three other eyewitnesses named [the defendant] as an accomplice in [the victim's] shooting." *Id.* at 137, 479 N.W.2d at 571.

Similarly, Heft's intervening cause defense did not rest solely on the jury knowing of and drawing a negative inference from Cisler's invocation of the fifth amendment. The jury was presented with inconsistent out-of-court statements made by Cisler. Two accident reconstruction experts testified for the defense. The defense presented photographs of the Cisler vehicle. Because Heft was able to present this important evidence in support of her intervening cause defense, we cannot say that she was deprived of a fair opportunity to present a defense.

Next, we turn to Heft's equal protection argument. Heft asserts that because sec. 905.13, Stats., regarding comment upon or inference from the claim of privilege, applies only to criminal cases, that section violates the equal protection clause of the fourteenth amendment.

The applicable test for an equal protection challenge where neither a fundamental right nor a suspect classification is involved was addressed as follows in *State v. Kennedy,* 134 Wis. 2d 308, 396 N.W.2d 765 (Ct. App. 1986).

> If neither a fundamental right nor a suspect classification is involved, a statutory classification need only be rationally related to a legitimate state interest to withstand an equal protection challenge. The basic test is not whether individuals are treated differently but whether a reasonable basis justifies the different treatment. A statute is presumed to be constitutional, and its unconstitutionality must be demonstrated beyond a reasonable doubt.

*Id.* at 322, 396 N.W.2d at 770 (citations omitted).

Fundamental rights include the right to appeal a criminal conviction, *Griffin v. Illinois,* 351 U.S. 12, 20 (1956) (Frankfurter, J., concurring); the right to vote, *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 670 (1966); and the right to procreate, *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 541 (1942). Existing case law does not establish the existence of a fundamental right to have a witness invoke his fifth amendment privilege in the presence of the jury, or to instruct the jurors of inferences they could draw from the invocation. Heft argues that the rights implicated in this appeal are the rights of confrontation, compulsory process and effective assistance of counsel. Heft declines to explain how these rights are related to the issues in this appeal, nor does she support an argument that the invocation before a jury and the corresponding instruction are fundamental rights in and of themselves. Under these circumstances, we decline to conclude that a fundamental right is implicated by the issues in this appeal.

As a fundamental right is not at issue and Heft does not allege that this case involves a suspect classification, Heft faces the formidable task of establishing that the different treatment which sec. 905.13, Stats., affords civil and criminal cases is not rationally related to a legitimate state interest. The fifth amendment forbids instructing a jury that it may draw a negative inference from a defendant's failure to testify in a criminal case. *Griffin v. California,* 380 U.S. 609, 615 (1965). However, in a civil case the prevailing rule is that the fifth amendment does not prohibit such an instruction. *Baxter v. Palmigiano,* 425 U.S. 308, 318–19 (1976). *Accord Grognet v. Fox Valley Trucking Serv.,* 45 Wis. 2d 235, 239, 172 N.W.2d 812, 814–15

(1969); *Molloy v. Molloy*, 46 Wis. 2d 682, 686–87, 176 N.W.2d 292, 295–96 (1970).

The divergent treatment accorded to civil and criminal cases is rationally related to the higher stakes involved in a criminal case, where the state's sole interest is to convict. See *Baxter,* 425 U.S. at 318–19. In criminal cases "evidentiary rules that tend to make the assertion of a privilege more costly are disfavored because they discount a defendant's constitutional rights." *Brink's, Inc. v. City of New York,* 717 F.2d 700, 708–09 (2d Cir. 1983). In contrast are civil actions where "there is generally no constitutional interest underlying a particular claim of privilege." *Id.* at 709.

Clearly, the legislature had a reasonable basis for distinguishing between civil and criminal actions in the application of sec. 905.13, Stats. In criminal proceedings, a defendant's constitutional rights and personal liberty are at stake. At risk also is a defendant's reputation in the community. Thus, the consequences of a criminal conviction are much more severe than in a civil action where typically only money damages are at stake. Therefore, the harsh consequences of criminal conviction justify the special treatment given to a person invoking the fifth amendment right against self-incrimination in a criminal action.

It may be argued, however, that the prohibition against drawing a negative inference accorded criminal defendants should not encompass third-party witnesses in criminal proceedings. A third-party witness is not the object of the proceeding and consequently is not at jeopardy like the defendant.

However, there are several reasonable bases for not exempting third-party witnesses to criminal proceedings from sec. 905.13, Stats. The state makes a

compelling argument for mutuality. A defendant may not be forced to invoke the fifth amendment privilege from self-incrimination in the presence of the jury. It would not be fair to allow a defendant to call a witness whom it is known will invoke the fifth amendment in front of the jury and then argue that the witness and not the defendant is the guilty party.

It could be argued that disparate treatment is justified on the grounds that the defendant is facing criminal charges and a third-party witness is not. We reject such an approach because it may cause jury confusion and thereby lead to a denigration of the defendant's right against self-incrimination.

The state is also legitimately concerned over the potential for collusion. Were it permissible to draw a negative inference from a witness' invocation of the fifth amendment in a criminal case, a defendant could create reasonable doubt by "recruiting" witnesses to "take the fifth."

Because there are a number of reasonable bases for the divergent treatment which sec. 905.13, Stats., accords criminal and civil defendants and these bases are rationally related to legitimate state interests, we find that the equal protection clause of the fifth amendment is not violated.

*By the Court.*—Order affirmed.