STATE of Wisconsin, Plaintiff-Respondent,

v.

Peter R. CASH, Defendant-Appellant.†

Court of Appeals

*No. 03–1614–CR. Submitted on briefs February 4, 2004.—*
*Decided February 25, 2004.*

2004 WI App 63

(Also reported in 677 N.W.2d 709.)

† Petition to review denied 5-17-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lynn M. Bureta*, of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Peter R. Cash appeals from a judgment of conviction for burglary contrary to WIS. STAT. § 943.10(1)(a) (2001–02),[1] and an order denying his postconviction motion for plea withdrawal. Cash argues that his plea of no contest was premised upon an

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

invalid plea agreement pursuant to *State v. Hayes*, 167 Wis. 2d 423, 425, 481 N.W.2d 699 (Ct. App. 1992), which prohibits a plea bargain that allows a judgment to be reopened and amended to recite a lesser conviction if the defendant successfully completed probation. Cash also claims that both of his trial counsel were ineffective on a variety of grounds. We reject Cash's arguments and affirm the judgment and postconviction order.

## BACKGROUND

¶ 2. On April 13, 2001, the State filed a criminal complaint against Cash alleging one count of burglary as a repeater contrary to WIS. STAT. §§ 943.10(1)(a) and 939.62(2). The complaint alleged that Cash, a former employee at Quad/Tech, had entered the Quad/Tech facilities using his employee access card and had taken computer equipment without permission. The complaint cited statements made by Cash's brother, Jonathan, which implicated Cash in the burglary. Following a preliminary hearing, Cash was bound over for trial. The State then filed an Information alleging the same charge of burglary as a repeater.

¶ 3. Cash's original trial counsel, Daniel S. Grable, filed motions to suppress on a variety of grounds not germane to this appeal. The trial court held hearings on these motions on June 21, 2001, and July 24, 2001. The latter date was also the date for the scheduled jury trial. At the conclusion of the evidentiary hearing, the court issued an oral ruling denying in part and granting in part the motions to suppress. The case was set for jury trial that afternoon.

¶ 4. Following a recess, the parties advised the trial court that they had reached a plea agreement under which Cash would enter a no contest plea to the

charge of burglary. In exchange, the State agreed to dismiss the repeater allegation and to concur in the sentencing recommendation to be made in the presentence report. In addition, the plea agreement included the following provision which lies at the heart of one of the appellate issues: if Cash returned a substantial portion of the stolen property in good working order prior to the sentencing, the State would ask the court to "reopen the judgment of conviction," request that the charge be reduced to felony theft, a Class E felony conviction, and recommend a sentence of one year in the county jail.

¶ 5. After conducting a thorough plea colloquy, the trial court accepted Cash's no contest plea to the burglary charge and dismissed the repeater allegation. Cash was released on a signature bond for a two-week period in order to secure the stolen items with the understanding that bail would be reviewed after the two-week period on August 9, 2001.

¶ 6. Cash did not appear at the August 9, 2001 hearing. As a result, the trial court revoked the signature bond and issued a capias for Cash's arrest. Cash was later apprehended[2] and when he next appeared, Grable, his attorney, requested permission to withdraw. Although the court was prepared to proceed with sentencing, it granted Grable's request to withdraw and adjourned the sentencing hearing.

¶ 7. On October 22, 2001, Cash appeared before the trial court with new counsel, Charles K. Krombach, who moved for a plea withdrawal on grounds also not germane to this appeal. The court denied the motion,

---

[2] The record reflects that Cash was apprehended after fleeing the country to New Zealand. On September 21, 2001, the State filed an Information against Cash alleging bail jumping contrary to Wis. Stat. § 946.49(1)(b).

and the matter was once again adjourned for sentencing. On November 5, 2001, Cash was sentenced to eight years, consisting of four years of initial confinement followed by four years of extended supervision. The court entered a judgment of conviction on November 6, 2001.[3]

¶ 8. On August 27, 2002, represented by yet another attorney, Cash filed a motion for postconviction relief on grounds of ineffective assistance of both prior counsel. The motion alleged that Grable, Cash's first counsel, was ineffective for (1) failing to challenge Cash's arrest for lack of probable cause and an arrest warrant, (2) failure to challenge his brother's separate arrest for lack of probable cause and arrest warrant, and (3) failure to contest the authority of the Waukesha County Sheriff's Department to arrest both himself and his brother in Milwaukee county without evidence of compliance with Wis. Stat. § 175.40(6)(d), governing arrest in a foreign jurisdiction. Cash also alleged that Krombach, his second counsel, was ineffective for: (1) failing to seek an adjournment at the October 22, 2001 hearing, and (2) failing to fully investigate Cash's case before filing a "bare-bones" motion for plea withdrawal and failing to file a new motion before sentencing.

¶ 9. On November 4, 2002, Cash filed a supplemental motion for postconviction relief on grounds that the plea agreement was invalid under *Hayes* because it called for the legal impossibility of reopening a judgment after conviction.

---

[3] An amended judgment of conviction was entered on December 11, 2001, to accurately reflect Cash's sentence credit of 138 days.

457

¶ 10. The trial court held a *Machner*[4] hearing on Cash's postconviction motions on November 11, 2002, at which both Grable and Krombach testified. On January 9, 2003, following oral arguments, the court issued an oral decision denying Cash's motions. The trial court entered a written order reflecting its decision on January 20, 2003.

¶ 11. Cash appeals.

## DISCUSSION

### *Validity of Plea Agreement*

¶ 12. As noted, the plea agreement provided that if Cash returned a substantial portion of the stolen items in good condition before the sentencing, the State would ask the trial court to reopen the judgment and to amend the burglary charge to felony theft.[5] Citing *Hayes*, Cash argues that the plea agreement was invalid because a trial court does not have the authority to reopen a judgment of conviction.

¶ 13. A defendant seeking to withdraw a guilty or no contest plea after sentencing bears "the heavy burden of establishing, by clear and convincing evidence,

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[5] The State makes a threshold argument that this issue is moot because Cash was not able to recover the stolen items. Thus, the State reasons that a resolution of this issue could not have any practical legal effect. *See Milwaukee Police Ass'n v. City of Milwaukee*, 92 Wis. 2d 175, 183, 285 N.W.2d 133 (1979). However, Cash's argument is that the plea agreement was void at its inception. As such, Cash responds that whether he was able to take advantage of the agreement is irrelevant. We agree with Cash. The issue is not moot.

458

that withdrawal of the plea is necessary to correct a manifest injustice." *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). A "manifest injustice" occurs when a defendant makes a plea involuntarily or without knowledge of the charge or potential punishment if convicted. *See* WIS. STAT. § 971.08(1)(a); *State v. James*, 176 Wis. 2d 230, 237, 500 N.W.2d 345 (Ct. App. 1993). "A plea which is not knowingly, voluntarily or intelligently entered is a manifest injustice." *State v. Giebel*, 198 Wis. 2d 207, 212, 541 N.W.2d 815 (Ct. App. 1995).

¶ 14. Cash argues that a plea based on a legal impossibility makes the plea an uninformed one, *State v. Dibble*, 2002 WI App 219, ¶ 5, 257 Wis. 2d 274, 650 N.W.2d 908, *review denied*, 2002 WI 121, 257 Wis. 2d 121, 653 N.W.2d 893 (Wis. Oct. 21, 2002) (No. 02–0538–CR), and that a plea must meet legal standards for it to be a valid plea, *State v. Woods*, 173 Wis. 2d 129, 140, 496 N.W.2d 144 (Ct. App. 1992).

¶ 15. Cash argues that *Hayes* renders his plea invalid. The plea agreement in *Hayes* provided, in part, that if Hayes successfully completed probation, the case would be reopened and he would be convicted of a misdemeanor. *Hayes*, 167 Wis. 2d at 425. The trial court rejected this provision, concluding that it lacked the power to reopen and amend the judgment. *Id.*[6]

---

[6] Unfortunately, *State v. Hayes*, 167 Wis. 2d 423, 481 N.W.2d 699 (Ct. App. 1992), does not present a detailed statement of the facts and therefore it is unclear as to exactly when the trial court rejected this provision of the plea agreement. We see three possibilities: (1) at the sentencing when the court ordered probation, (2) when the court entered the written judgment, or (3) when the defendant later made application to implement the provision after successfully completing probation.

¶ 16. Upon appeal, the *Hayes* court framed the issue in terms of "the trial court's power to reopen a judgment after a successful probation." *Id*. In answering this question, the court focused on the language of WIS. STAT. § 973.09(1)(a) governing conditions of probation and concluded that the only reward for successful probation is discharge pursuant to § 973.09(5). *Hayes*, 167 Wis. 2d at 427. As a result, *Hayes* held that the judgment of conviction could not be amended and "the trial court lacked the power to impose probation in accordance with the reopening provision in the plea agreement." *Id*. at 427–28.

¶ 17. We hold that *Hayes* does not render the plea agreement invalid in this case. The agreement here provided that following his plea of no contest, Cash would have the opportunity *prior to sentencing* to procure and return the stolen items. If Cash was able to satisfy this contingency during this interval, the State would amend the charge to a lesser offense and the sentencing would proceed accordingly.[7] Unlike the defendant in *Hayes*, Cash would not have served any portion of a sentence (probation or otherwise) prior to any potential amendment of charge and the imposition of sentence. Thus, the concerns of the *Hayes* court regarding the limitations of the probation statute and the trial court's lack of authority to amend a judgment after completion of a sentence are not implicated here.

---

[7] Thus, we accept Cash's contention that he was "convicted" following his plea within the meaning of *State v. Wimmer*, 152 Wis. 2d 654, 449 N.W.2d 621 (Ct. App. 1989); *State v. Trudeau*, 157 Wis. 2d 51, 458 N.W.2d 383 (Ct. App. 1990); and *State v. Smet*, 186 Wis. 2d 24, 519 N.W.2d 697 (Ct. App. 1994). However, both his plea and conviction during this interval were conditional under the terms of the plea agreement.

¶ 18. We hold that the plea agreement was not invalid under *Hayes*. Therefore, the trial court correctly denied Cash's motion to withdraw his no contest plea.

## *Ineffective Assistance of Counsel*

¶ 19. Cash argues that the trial court erred in denying his motion for plea withdrawal based on his claims of ineffective assistance of trial counsel. Cash contends that his first trial counsel, Grable, was ineffective for (1) failing to challenge Cash's arrest for lack of probable cause and an arrest warrant; (2) failing to challenge the use of information obtained from Cash's brother, Jonathan; and (3) failing to contest the authority of the Waukesha county sheriff's authorities to arrest Cash in Milwaukee county with evidence of the written policies mandated by Wis. Stat. § 175.40(6)(d). Cash alleges his second trial counsel, Krombach, was ineffective for failing to seek an adjournment of the plea withdrawal hearing on October 22, 2001, and failing to fully investigate the case prior to filing a "bare-bones" motion to withdraw the plea and not filing a new motion prior to sentencing.

¶ 20. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that he was prejudiced as a result of his attorney's deficient conduct. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). To prove deficient performance, the defendant must show specific acts or omissions of his attorney that fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To show prejudice, the defendant must demonstrate that the

result of the proceeding was unreliable. *Id.* at 687. If the defendant fails on either prong—deficient performance or prejudice—the ineffective assistance of counsel claim fails. *Id.* at 697. We strongly presume counsel has rendered adequate assistance. *Id.* at 690.

### First Trial Counsel

¶ 21. Before we address Cash's challenges to the performance of his initial trial counsel, Grable, we recite the relevant facts. On April 9, 2001, Quad/Tech was burglarized by use of Cash's Quad/Tech employee pass card. Certain items of computer equipment were taken during the burglary. Waukesha County Sheriff Detective Robert Grall interviewed Cash, who stated that his pass card had been stolen in March 2000. However, a check with Quad/Tech established that Cash had continued to use the pass card after March 2000. Cash terminated his employment with Quad/Tech at the end of June 2000, but the pass card was used thereafter, on September 30, 2000, and on April 8 and 9, 2001. Grall found certain items for sale on Ebay, an internet auction site, which appeared to match certain items taken in the burglary. The seller of the items was identified as Jonathan, Cash's brother. In addition, Grall noticed some tires for sale on the Ebay site, which Grall believed to be the same tires he had seen in Cash's apartment when he interviewed Cash.

¶ 22. Based on this information, the Waukesha County Sheriff's Department obtained a search warrant for Cash's residence, which was located in Milwaukee county. When the Waukesha county authorities executed the search warrant, the Milwaukee county authorities were also in attendance. Upon arrival, the

Waukesha county authorities first arrested Cash and then searched the premises. The following day they arrested Jonathan.

¶ 23. Cash first contends that Grable was ineffective for failing to register a probable cause challenge to his arrest. Cash makes two argues in support: (1) the information available to the police at the time of his arrest was insufficient to support probable cause, and (2) the police improperly used statements made by Jonathan after Cash's arrest to support probable cause for Cash's arrest.

¶ 24. At the *Machner* hearing, Grable testified that he did not raise any probable cause to Cash's arrest because he believed the arrest was supported by probable cause. The trial court agreed. Whether probable cause to arrest exists based on the facts of a given case is a question of law we review independently of the trial court. *State v. Truax*, 151 Wis. 2d 354, 360, 444 N.W.2d 432 (Ct. App. 1989). A police officer has probable cause to arrest when the totality of the circumstances within that officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that the defendant probably committed a crime. *State v. Koch*, 175 Wis. 2d 684, 701, 499 N.W.2d 152 (1993). This is a practical test based on "considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *State v. Drogsvold*, 104 Wis. 2d 247, 254, 311 N.W.2d 243 (Ct. App. 1981) (citation omitted). The objective facts before the police officer need only lead to the conclusion that guilt is more than a possibility. *State v. Richardson*, 156 Wis. 2d 128, 148, 456 N.W.2d 830 (1990).

██

¶ 25. Our factual recital at the beginning of this discussion sets out the highly incriminating evidence against Cash known to the Waukesha county authorities prior to Cash's arrest. Based on that information, a reasonable officer would conclude that Cash's guilt was more than a possibility. *See id*. We conclude that Grable was not deficient in failing to challenge Cash's arrest for lack of probable cause.[8]

¶ 26. Cash also argues that Grable was ineffective for failing to seek suppression of certain statements he made on the basis that his arrest in his home was accomplished without an arrest warrant. Cash argues that his arrest was unlawful pursuant to *Payton v. New York*, 445 U.S. 573, 590 (1980), which prohibits a warrantless arrest in the home. *Payton*, however, is not an ironclad rule. In *United States v. Winchenbach*, 197 F.3d 548 (1st Cir. 1999), the court held that where the police are lawfully on the suspect's premises by virtue of a valid search warrant, they may make a warrantless arrest of the suspect prior to the search if the arrest is supported by probable cause. *Id*. at 554. The court stated:

> A search warrant represents a judicial determination that there is probable cause to invade the privacy of the suspect's home. The impartial determination that supports the issuance of a search warrant justifies a greater intrusion than that supporting the issuance of an arrest warrant. Thus, once an officer has procured a

---

[8] Cash also argues that the police improperly relied upon Jonathan's postarrest statements to support Cash's arrest. This argument is a nonstarter given that Jonathan provided his statements *after* Cash's arrest.

search warrant, the privacy interests that led to the imposition of an arrest warrant requirement in *Payton* have been protected.

*Winchenbach*, 197 F.3d at 553, (quoting from *Jones v. City of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988)). The *Winchenbach* court went on to explain that *Payton*, although addressing the validity of an arrest, was essentially grounded on the "physical integrity of the home." *Winchenbach*, 197 F.3d at 553 (citation omitted). The court concluded that this interest was sufficiently addressed and protected by the existence of a valid search warrant. *Id.* at 553–54.

¶ 27. We agree with *Winchenbach* and we adopt it for purposes of Wisconsin law. Here, the police were lawfully present on Cash's premises by virtue of a valid search warrant.[9] And based on our earlier discussion, Cash's warrantless arrest in his home was supported by probable cause. We therefore reject Cash's assertion that Grable was ineffective for failing to challenge his warrantless arrest.[10]

¶ 28. Finally, Cash contends that Grable was ineffective for failing to contest the authority of the Waukesha county detectives to execute the search war-

---

[9] Cash makes no challenge to the search warrant.

[10] While we have already determined that his warrantless arrest was supported by probable cause, we note that Cash's statements were made outside of his residence and therefore, even if the arrest were deemed illegal, his statements would not have been suppressed as the result of a constitutional violation. *See New York v. Harris*, 495 U.S. 14, 21 (1990) (the exclusionary rule does not bar statements made outside the home even though statement was taken after an arrest made in the home in violation of *Payton v. New York*, 445 U.S. 573 (1980)).

rant and to accomplish an arrest in the city of Milwaukee.[11] Cash's argument is based on WIS. STAT. § 175.40(6), governing arrests and assistance, which provides:

> **(6)** (a) A peace officer outside of his or her territorial jurisdiction may arrest a person or provide aid or assistance anywhere in the state if the criteria under subds. 1. to 3. are met:
>
> 1. The officer is on duty and on official business.
>
> 2. The officer is taking action that he or she would be authorized to take under the same circumstances in his or her territorial jurisdiction.
>
> 3. The officer is acting to respond to any of the following:
>
> a. An emergency situation that poses a significant threat to life or of bodily harm.
>
> b. Acts that the officer believes, on reasonable grounds, constitute a felony.
>
> . . . .
>
> (d) In order to allow a peace officer to exercise authority under par. (a), the peace officer's supervisory agency must adopt and implement written policies regarding the arrest and other authority under this

---

[11] Cash made this same argument before the trial court but only as to his brother Jonathan's arrest. Therefore, the State argues that the issue is waived as to Cash's arrest. While the trial court record supports the State's waiver argument, we nevertheless address the merits of the issue in rejecting Cash's challenge. *See State v. Caban*, 210 Wis. 2d 597, 609, 563 N.W.2d 501 (1997) (an appellate court has the power in the exercise of its discretion to consider issues raised for the first time on appeal).

subsection, including at least a policy on notification to and cooperation with the law enforcement agency of another jurisdiction regarding arrests made and other actions taken in the other jurisdiction.

¶ 29. Cash concedes that the Milwaukee county authorities were present when the Waukesha county officers arrested him and searched his premises. However, he argues that WIS. STAT. § 175.40(6)(d) required the Waukesha County Sheriff's Department to adopt written policies covering the authority of its officers to arrest in another jurisdiction. Cash complains that the State did not establish the existence of such policies in this case, and therefore he reasons that the evidence obtained incident to his arrest would have been suppressed had Gable sought such relief.

¶ 30. Assuming arguendo that the Waukesha County Sheriff's Department had not adopted the written policies required by WIS. STAT. § 175.40(6)(d), we agree with the State that suppression is not a remedy for such a statutory transgression. "[W]rongfully or illegally obtained evidence is to be suppressed only where the evidence was obtained in violation of an individual's constitutional rights *or in violation of a statute that expressly requires suppression as a sanction." State ex rel. Peckham v. Krenke*, 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999) (emphasis added). WISCONSIN STAT. § 175.40 does not protect a constitutional right; nor does it recite suppression as a sanction for its violation. Therefore, we conclude that Cash was not prejudiced by counsel's failure to challenge his arrest on this ground.

467

*Second Trial Counsel*

¶ 31. We next turn to Cash's challenges to the performance of Krombach, his second trial counsel. Cash argues that Krombach was ineffective for failing to request an adjournment at the October 22, 2001 hearing on the motion to withdraw the plea and for failing to fully investigate the case. Cash reasons that had Krombach asked for an adjournment and more fully investigated, he would have unearthed the potential probable cause challenge and the WIS. STAT. § 175.40 challenge to his arrest.

¶ 32. However, we have already explained why such challenges would have lacked merit. As such, it follows that Cash was not prejudiced by Krombach's failure to pursue these matters. In order to satisfy the prejudice prong of an ineffective assistance of counsel claim, the defendant must show that counsel's errors were serious enough to render the resulting conviction unreliable. *State v. Swinson,* 2003 WI App 45, ¶ 58, 261 Wis. 2d 633, 660 N.W.2d 12, *review denied,* 2003 WI 126, 265 Wis. 2d 417, 668 N.W.2d 557 (Wis. July 9, 2003) (No. 02–0395–CR & No. 02–0396–CR).

## CONCLUSION

¶ 33. We conclude that plea agreement was not invalid under *Hayes.* We further conclude that neither of Cash's trial counsel were ineffective. Nor has Cash demonstrated any prejudice as to any of his claims of ineffective assistance of counsel. We affirm the judgment and order denying Cash's motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.